JAMES GARNER *et al.*, Plaintiffs in Error, *v.* LEVI WILLETT, Defendant in Error.

### ERROR TO MERCER.

Where the government has issued two patents for the same tract of land, the elder patent is conclusive evidence of title, unless it was obtained by fraud, or the government had not title, or its agent no authority to sell.

Courts of equity may establish the right of a junior patent, founded on a prior equity.

A. filed affidavits for preëmption to a tract of land, at the Springfield land office, on the 13th of May, 1831, paid the purchase money and entered the land at the same on the 21st of May, 1832, received his patent on the 1st of November, 1839. By act of congress of the 19th of October, 1831, the tract in dispute was included in a new land district, and B. obtained a patent therefor, dated the 20th of January, 1853: *Held*, that the act of the land officers is presumptive evidence, that there was good cause for not allowing the preëmption as required by the preëmption act of May, 1830, and that the title of A. was confirmed by the act of congress of the 2d of July, 1836.

THIS is an action of ejectment for the recovery of the possession of lot number 5, block 6, in New Boston, Mercer county, Illinois, commenced in the circuit court of that county by the plaintiffs in error against the defendant in error, at the October term, 1852.

The original declaration claimed title to the whole lot jointly in the three plaintiffs, to which the plea of not guilty was filed; afterward, by leave of the court, the declaration was amended by adding a count claiming title in Benjamin C. Taliaferro and John C. Pepper, two of the plaintiffs, to two undivided thirds of the premises, to which no plea was interposed.

At the September term, 1855, the cause was tried without a jury, by THOMPSON, Judge, who found for the defendant.

Upon the trial the plaintiffs, in support of the issue on their part, offered and read in evidence three patents from the United States to Benjamin C. Taliaferro, one of the plaintiffs, bearing date January 20, 1853, conveying all of fractional section 31, T. 14 N., R. 5 W. of the 4th P. M., in the Dixon land district. These patents each recited that the said Benjamin C. Taliaferro had "deposited in the general land office of

the United States, a certificate of the register of the land office at Dixon, whereby it appears that full payment has been made by the said Benjamin C. Taliaferro, according to the provisions of the act of congress of the 24th of April, 1820."

The plaintiffs, in further support of the issue on their part, offered and read in evidence a deed bearing date September 3d, 1852, from the said Benjamin C. Taliaferro, conveying in fee one undivided third of said fractional section to James Garner, another of the plaintiffs, and a deed bearing date the 15th day of February, A. D. 1853, from the plaintiff, Benjamin C. Taliaferro to John C. Pepper, the other plaintiff, conveying one undivided third part of the same section.

The plaintiffs, in further support of the issue on their part, then read in evidence the following agreement, to wit:

1. That the defendant was in possession of the premises described in the declaration at the time of the commencement of this suit.

2. That the premises described in the declaration are situated on and a part of fractional section thirty-one, in township fourteen north, of range five west of the fourth principal meridian.

3. That the defendant claims title and holds by regular conveyances under John W. Deniston, the first patentee.

4. That at the time the plaintiff, Benjamin C. Taliaferro, purchased the premises from the United States, the defendant was in the actual possession of the lot described in the declaration.

5. That on the 13th day of May, 1831, John W. Deniston filed and caused to be made certain affidavits, as appear by the deposition of Connelly, in the land office of the Springfield district in the State of Illinois.

6. That John W. Deniston paid the purchase money and procured a duplicate receipt therefor, for said fractional section, at the land office in the Springfield district, on the 21st day of May, 1832, and upon such purchase a patent issued to him which bears date November 1st, 1839.

7. That the premises in controversy were, by an act of congress passed February 19th, 1831, included in a new district, since called the Quincy Land District, until some years after, when it became a part of the Dixon Land District; that the president under said act located the offices of the Quincy district at the town of Quincy; that the president appointed Samuel Alexander the first register, and Thomas Carlin the first receiver of the Quincy district, and that their commissions bear date March 2d, 1831, running for four years; that the bond of Alexander bears date July 19th, 1831, and his oath of office July 20th, 1831, and that the bond of Carlin bears

date July 12th, 1831, and his oath of office September 19th, 1831.

8. That parts of the said fractional section have been occupied by John W. Deniston and those claiming under him, ever since the entry by him, but not the lot in controversy.

10. The premises described in plaintiffs' patents and defendant's patent are the same; and for all Sec. 31, 14 N., 5 W. of 4th P. M.

Whereupon the plaintiffs rested.

And the defendant, in support of the issue on his part, then offered, in evidence, a patent bearing date November 1st, 1839, from the United States to John W. Deniston, for the same fractional section described in plaintiffs' patents, and *in the same form and containing the same recitals* with that of plaintiffs' patents.

The defendant, in further support of the issue on his part, offered a deed from one of the plaintiffs, James Garner, to the defendant, bearing date July 10, 1854, conveying an undivided third of said fractional section in fee.

And thereupon the defendant rested.

The plaintiffs, by way of reply, offered and read in evidence, without objection, the depositions of Augustus C. Marsh, who was register of the land office at Quincy when the deposition was taken, and of John Connelly, who was at the time of the taking of his deposition, the register of the land office at Springfield.

The deposition of Marsh proves that the first entry in the Quincy land office was made on December 14th, 1831.

It is proven by the deposition of John Connelly, that the records of his office show that said fractional section was entered by John W. Deniston on the 21st day of May, 1832, and that he finds certain preëmption proof on file in his office, bearing date May 13th, 1831.

But that he finds no reference to such proof when the entry was made, and no further evidence of proceeding under the preëmption law than is set forth in the affidavit of Deniston.

It is further proven, by the deposition of Connelly, that it is customary to furnish the different land offices with plats before the land is entered, but whether necessary before an entry could be made, the witness is not informed; he states that he finds no plat of the premises, in controversy at the time his deposition was taken, in his office; he states that it is the duty of the register to make a mark on the plat indicating an entry whenever the land is entered; and he also states that other tracts that were within the limits of the Quincy district appear by the records of his office to have been entered at the

Springfield district after the new district was formed, and some after the time the entry was made by Deniston.

The plaintiffs again rested, when the defendant offered, in evidence, certain parts of a printed book, entitled, "General Acts of Congress respecting the sale and disposition of the public lands, with instructions by the Secretary of the Treasury and Commissioner of the General Land Office, and official opinions of the Attorney General, etc."

The parts offered were numbered 57, 69, 72, 77, 146, 488, 499, 501, 502, 503, 531, and the list in the appendix, commencing on page 1005.

The case is brought to this court by writ of error by the plaintiffs below.

GOUDY and JUDD, and J. MANNING, for Plaintiffs in Error.

H. M. WEAD, for Defendant in Error.

SCATES, C. J. Plaintiffs claim and derive title from the United States, by patent dated January 20, 1853.

Defendant derives title by patent dated November 1st, 1839.

Possibly, in an action at law, it might be deemed sufficient to refer to the authorities which have held the elder patent conclusive evidence of title. *Baynell* v. *Broderick*, 13 Pet. R. 436; *Manciers* v. *Lawton*, 10 John. R. 22; *Bruner* v. *Manlove*, 1 Scam. R. 156; *Milliken et al.* v. *Lessee of Starling*, 16 Ohio R. 61; *Surget et al.* v. *Little*, 24 Miss. R. 118.

Courts of equity may establish the right of a prior patent founded on a prior equity. *Isaacs* v. *Steel*, 3 Scam. R. 97.

So the validity of the patent may be contested at law for fraud, or where the government had no title, or its agents had no authority to sell. *Patterson* v. *Wrein et al.*, 6 Cond. R. 355; *Polk's lessee* v. *Wendall et al.*, 3 ibid. 320; *Wilcox* v. *Jackson*, 13 Pet. R. 498.

This last is urged as a ground of objection to the defendant's title in this case. The Quincy land district was created by act of February 19th, 1831, the officers of which were commissioned March 2d, and the last in time, qualified September 19th, 1831, and the first entry in that office was made on December 14th, 1831.

The land lies in this district as then created, and, it is insisted, could not be sold by the officers of the Springfield district, after the creation of the new one.

This, as a general proposition, is true, and was so held in *Matthews* v. *Zane's lessee*, 5 Cranch. R. 92.

But it may have its exceptions, and we think this case presents one, as there is not sufficient evidence to exclude it.

The burden of proof must lie upon the plaintiffs, who would contradict the presumptions arising from the patent.

Looking to the laws, the instructions under and constructions of the laws, by the government, and the evidence, we feel warranted in believing that the land officers at Springfield had authority to make this sale.

By marginal reference in the patent, it appears to have been issued upon preëmption certificate No. 6,028, and this is corroborated by the fact of the patentee having made and filed his affidavit for preëmption on May 13th, 1831, together with proof by another witness.

This application was duly made within the year, under the preëmption act of May 29th, 1830. It is not clear, by the evidence, why the money was not paid and the preëmption allowed within the year. But· we may presume there was sufficient ground for its postponement, and allowance under subsequent acts of congress, when such title is collaterally attacked, unless the preëmption is excluded by the proof. For the judgment of the land officers is final upon the preëmption in all collateral trial.

We cannot resist the conclusion that the patentee was prevented from entering this tract within the year, by reason of the township plats not having been returned, and this appears by the correspondence between the general and local land offices. See vol. 2 Public Lands, part 2, numbers 488, 501, 502 and 503.

The right of settlers thus prevented from making preëmption, was preserved and extended by the act of July 14th, 1832, and March 2d, 1833. 2 Purple Stat. 1833. And entries made in the old district, subsequent to the creation of a new district, and before the opening of the office in the new, were confirmed by act of July 2d, 1836, Sec. 1. 2 Purple Stat. p. 1334.

From the correspondence between the commissioner of the general land office, and the land officers at Springfield, and a general circular, see Land Laws, part 2d, numbers 488, 500, 501, 502, 503, 531, it appears that preëmptors were prevented from making proof and entry for want of township plats, and that such entries were afterward completed at the Springfield office on lands lying in the Quincy district.

According to the decision in *Matthews* v. *Zane's lessee*, above referred to, and the opinion of the Attorney General of June 21st, 1836, applying it to the act of May 29th, 1830, defendant was too late with his application and proof at the Springfield office. Land Laws, part 2d, number 64, pp. 100, 101. But then it is equally clear that defendant's entry, or appliaction to preëmpt was within the confirmatory act of

July 2d, 1836, and was by it confirmed within the interpretation of that act by the attorney general (see same, part 2, numbers 69 and 72), in which last opinion the attorney general held an entry good in the confirmatory act, which he had held void under previous acts for want of power in the land officers of the old district to make the sale. This we regard as a sound interpretation of these acts, and it has been adopted and acted on by the departments, as we must infer from the correspondence above referred to, and the patent before us.

We must, in view of all the circumstances in evidence, conclude that this patent was duly issued by authority, whatever may have been wanting in the inception of the purchase.

The land having been thus fairly sold to the defendant, by the United States, and by him occupied for years, destroys, not only the legal supremacy of plaintiffs' title, but all apparent equity upon the facts now before us.

We are, therefore, of opinion that the defendant has exhibited a legal paramount title to the whole of the premises in question.

*Judgment affirmed.*